E-FILED
Wednesday, 22 September, 2021  02:12:24 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| ANITA MARTIN, *as Independent Administrator of the Estate of Marlene Hill, deceased,*   )<br>)<br>)<br>) | |
| Plaintiff,   ) | Case No.  1:20-cv-1449 |
| )<br>v.   )<br>) | |
| PETERSEN HEALTH OPERATIONS, LLC, *an Illinois Limited Liability Corporation d/b/a* Bloomington Rehabilitation & Health Care Center,   )<br>)<br>)<br>)<br>)<br>) | |
| Defendant.   ) | |

## <u>ORDER & OPINION</u>

This matter is before the Court on Plaintiff's Motion to Remand. (Docs. 16, 21).[1] Defendant responded (doc. 19), and Plaintiff replied (doc. 25) with leave from the Court. This matter is ripe for review. For the following reasons, Plaintiff's Motion to Remand (docs. 16, 21) is granted, and this case is remanded to the Circuit Court of the Eleventh Judicial Circuit of Illinois in McLean County.

### SUMMARY

This case arose from the death of Plaintiff's mother, Marlene Hill, who died after contracting COVID-19 while living at Defendant's nursing home in Bloomington, Illinois. Plaintiff filed suit in state court against the nursing home,

---

[1] The Court granted Plaintiff leave to refile a corrected copy of her original Motion to Remand (doc. 16) solely to correct a clerical error in the caption.

asserting claims for gross negligence and willful misconduct under the Illinois Nursing Home Care Act. Defendant removed the case to this Court on the bases of federal question jurisdiction and entitlement to a federal forum as an agent acting under a federal officer. Plaintiff now moves for remand.

The Court finds Plaintiff's well-pleaded Complaint presents no federal question, and Defendant did not act under a federal officer. Thus, Defendant's removal of the case to federal court was inappropriate, and this case is remanded back to state court.

## CASE BACKGROUND[2]

Plaintiff is the administrator of her mother's estate. (Complaint, Doc. 1-1 ¶ 5). Plaintiff's mother, a resident of Illinois, resided at Bloomington Rehabilitation & Health Care Center ("Bloomington Rehab"), a long-term care facility. (*Id.* ¶ 7). While living at Bloomington Rehab, Plaintiff's mother contracted COVID-19, which substantially contributed to her death on May 15, 2020. (*Id.* ¶ 2).

On November 16, 2020, Plaintiff filed this case in the state circuit court in McLean County. (Doc. 1-1). Plaintiff alleges Defendant failed to take precautions to prevent the spread of COVID-19 among its residents, which substantially contributed to the death of Plaintiff's mother. In particular, Plaintiff alleges Defendant had too few nurses (*id.* ¶¶ 85, 137, at 14, 20), made nurses care for too many patients each shift (*id.* ¶ 138, at 20), and provided insufficient personal protective equipment ("PPE") to employees (*id.* ¶¶ 139–143, at 20–21). In addition,

---

[2] Naturally, Plaintiff's allegations have yet to be determined by a trier of fact.

Plaintiff alleges Defendant failed to screen all residents for COVID-19 symptoms (*id.* ¶ 142.d, at 31), monitor her mother's condition (*id.* ¶¶ 123–125, at 18), or notify Plaintiff or a physician of changes in Plaintiff's mother's condition (*id.* ¶ 122, at 18). Plaintiff also appears to suggest Bloomington Rehab instructed one or more symptomatic employees to come in to work, but Plaintiff did not include any details supporting this allegation. (*Id.* ¶¶ 142.e, 156.e, at 31, 45). Plaintiff claims these acts and omissions constitute grossly negligent and willful violations of the Illinois Nursing Home Care Act, 210 ILCS 45/1-101 *et seq.* (*Id.* ¶¶ 147, 161, at 33, 48).

On December 29, 2020, Defendant removed the case to this Court. (Notice of Removal, Doc. 1 at 1). Defendant argued removal was proper pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Defendant was being sued for acts undertaken at the direction of a federal officer. (Doc. 1 at 5, 30). Defendant also argued removal was appropriate under the general removal statute, 28 U.S.C. § 1441, on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Plaintiff now moves for remand. (Docs. 16, 21).

## DISCUSSION

The Court will first assess federal officer removal under § 1442. Second, it will assess general removal under § 1441. The latter is premised solely on federal question jurisdiction, for which Defendant has three arguments: (1) Plaintiff's claims were completely preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e; (2) Plaintiff's claims necessarily raise a substantial issue of federal law (*i.e.*, an embedded federal

question); and (3) Plaintiff artfully pleaded her claims to avoid stating a necessary federal claim.

## I.   Federal Officer Removal under § 1442

Defendant alleges it " 'act[ed] under' a federal officer for purposes of jurisdiction under 28 U.S.C. § 1442(a)(1) because it was acting at the specific direction of federal authorities to prevent, treat and contain COVID-19 . . . ." (Memorandum in Opposition to Plaintiff's Motion to Remand, Doc. 19 at 9).

The federal officer removal statute permits a defendant to remove to federal court a state-court action brought against him for an "act" made "under color of office" while "acting under" an "agency" or "officer" of "the United States." 28 U.S.C. § 1442(a)(1).

> "The party seeking removal bears the burden of establishing federal jurisdiction . . . . [T]he Supreme Court has made clear that courts must liberally construe § 1442(a)." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018) (citations omitted). We therefore evaluate [Defendant's] allegations in support of removal under the federal pleading standards, asking whether they are facially plausible. *See id.* at 1016.
>
> Federal officer removal is appropriate when "the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Id.* at 1015.

*Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020).

Element one is obviously satisfied here. A company is considered a person under § 1442(a). *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) ("In construing statutes, 'unless the context indicates otherwise' the 'words "person" and "whoever" include corporations [and] companies . . . as well as individuals.' 1 U.S.C.

§ 1. There is no indication that Congress meant to exclude corporations [in § 1442].").

The dispute here centers on element two: whether Defendant was "acting under" a federal officer or agency. "Acting under" a federal officer requires an effort to "lawfully assist" a federal officer "in the performance of his official duty," *Davis v. South Carolina,* 107 U.S. 597, 600 (1883), and the private party must be "authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law," *City of Greenwood v. Peacock,* 384 U.S. 808, 824 (1966). "The crux of the inquiry . . . is whether there was a special relationship between the defendant and the federal government," *Baker*, 962 F.3d at 941, "distinct from the usual regulator/regulated relationship." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 157 (2007). Indicia of such a special relationship include any "delegation of legal authority[,] . . . any contract, . . . any employer/employee relationship, or any principal/agent arrangement" between the government and a private party. *Id.* at 156.

Defendant asserts the following:

> All actions taken by Bloomington Rehabilitation in preparation for, and response to, the COVID-19 pandemic, were taken 'in an effort to assist, or help carry out, the duties or tasks' as ordered by the CDC and [Centers for Medicare and Medicaid Services], and [Illinois Department of Public Health] surveyors, and performed pursuant to the direct orders and comprehensive and detailed directives issued by these agencies. Bloomington Rehabilitation was acting at the direction of the federal government to prevent, treat and contain COVID-19 and in its care and treatment of Marlene Hill.

(Doc. 1 ¶¶ 60–61, at 25–26). Notably absent are any indicia of a special relationship with the government. There was no delegation of legal authority, contract,

5

employer/employee relationship, or principal/agent arrangement. Rather, these assertions establish Defendant is merely a highly regulated private entity seeking to comply with federal laws and regulations. They do not demonstrate a special relationship. *See Dupervil v. All. Health Operations, LLC*, 516 F. Supp. 3d 238, 260–61 (E.D.N.Y. 2021), *appeal docketed*, No. 21-505 (2d Cir. Mar. 3, 2021) (finding that a nursing home's compliance with detailed COVID-19 regulations did not constitute "acting under" a federal officer). Being highly regulated is insufficient to render a party an agent of the government, and for good reason:

> Defendants' line of reasoning would have very far-reaching consequences. Consider, for example, that during this pandemic many private persons or entities have received federal funds under the CARES act and its Paycheck Protection Program ("PPP"), and may point to their dutiful compliance with CDC guidelines for limiting occupancy, face coverings, and health and sterilization measures. Small and large entities alike, including nonprofits, restaurants, vineyards, construction companies, and religious organizations, have accepted such funding, all while attempting to implement measures to curb the spread of COVID-19. Under Defendants' line of reasoning, all of these entities would be acting under a federal officer for purposes of § 1442(a)(1).

*Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 535 (D.N.J. 2020) (internal citation omitted).

Section 1442's purpose further illuminates why it excludes Defendant. Its basic purpose is "to protect federal officers from interference by hostile state courts." *See Watson*, 551 U.S. at 147 (quoting *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)). When a company like Defendant merely complies with federal law, there is no significant risk of state-court "prejudice" disabling federal officials from taking necessary action—unlike the interruption of government delegatees, contractors,

6

employees, or agents. *See Watson*, 551 U.S. at 148–49 (discussing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998)).

Because Defendant fails to satisfy element two, the Court need not analyze elements three and four of *Baker*'s test for federal officer removal. *Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020). The Court joins its colleagues in unanimously rejecting Defendant's construction of the federal-officer statute.[3] Defendant was not "acting under" a federal officer, so removal under 28 U.S.C. § 1442(a)(1) was improper.

## II.   General Removal under § 1441

Under 28 U.S.C. § 1441(a), a suit filed in state court may be removed to federal court if the federal court has original subject matter jurisdiction.

---

[3] The following is a non-exhaustive, chronological list of federal courts that have ruled against § 1442 removal in analogous cases: *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518 (D.N.J. 2020); *Martin v. Serrano Post Acute LLC*, No. CV 20-5937, 2020 U.S. Dist. LEXIS 165874, 2020 WL 5422949 (C.D. Cal. Sep. 10, 2020); *Saldana v. Glenhaven Healthcare LLC*, No. CV 20-5631, 2020 U.S. Dist. LEXIS 216490, 2020 WL 6713995 (C.D. Cal. Oct. 14, 2020); *Dupervil v. All. Health Operations, LLC*, 516 F. Supp. 3d 238 (E.D.N.Y. 2021), appeal docketed, No. 21-505 (2d Cir. Mar. 3, 2021); *Lyons v. Cucumber Holdings, LLC*, No. CV 20-10571, 2021 U.S. Dist. LEXIS 20838, 2021 WL 364640 (C.D. Cal. Feb. 3, 2021); *Estate of McCalebb v. AG Lynwood, LLC*, No. 2:20-cv-09746, 2021 U.S. Dist. LEXIS 47239, 2021 WL 911951 (C.D. Cal. Mar. 1, 2021); *Smith v. Colonial Care Ctr. Inc.*, No. 2:21-cv-00494, 2021 U.S. Dist. LEXIS 53554, 2021 WL 1087284 (C.D. Cal. Mar. 19, 2021); *Stone v. Long Beach Healthcare Ctr., LLC*, No. CV 21-326, 2021 U.S. Dist. LEXIS 58410, 2021 WL 1163572 (C.D. Cal. Mar. 26, 2021); *Garcia v. N.Y.C. Health & Hosps. Corp.*, 20 Civ. 9970, 2021 U.S. Dist. LEXIS 68575, 2021 WL 1317178 (S.D.N.Y. Apr. 8, 2021); *Elliot v. Care Inn of Edna LLC*, No. 3:20-CV-3185, 2021 U.S. Dist. LEXIS 122528, 2021 WL 2688600 (N.D. Tex. June 30, 2021); *Leroy v. Hume*, No. 20-CV-5325, 2021 U.S. Dist. LEXIS 152174, 2021 WL 3560876 (E.D.N.Y. Aug. 12, 2021); *Glenn v. Tyson Foods, Inc.*, No. 9:20-CV-184, 2021 U.S. Dist. LEXIS 153350, 2021 WL 3614441 (E.D. Tex. Aug. 12, 2021); *Estate of Heim v. 1495 Cameron Ave., LLC*, No. CV 21-6221, 2021 U.S. Dist. LEXIS 155006, 2021 WL 3630374 (C.D. Cal. Aug. 17, 2021).

The party invoking subject matter jurisdiction bears the burden of persuasion. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted) ("Federal courts are courts of limited jurisdiction . . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."). Thus, removal under § 1441 requires the removing party to demonstrate that original subject matter jurisdiction lies in the federal courts. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Also, "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citation omitted).

A.    *Federal Question Jurisdiction*

Like Neapolitan ice cream, original subject matter jurisdiction comes in three flavors: federal question, diversity, and supplemental jurisdiction. *See* 28 U.S.C. § 1331, 1332, 1367 (respectively). Here, only federal question jurisdiction is at issue.[4] (*See* doc. 1 at 3, 4).

The statutory grant of federal question jurisdiction provides federal district courts with original subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The

---

[4] Defendant did not allege diversity jurisdiction, and the parties do not appear to be diverse. And as there is neither federal question nor diversity jurisdiction supporting either of Plaintiff's two claims, demonstrated *infra*, neither claim can support or receive supplemental jurisdiction.

presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). A plaintiff is "the master of [her] claim," and as such, "may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

However, there are three niche "corollaries"[5] to the well-pleaded complaint rule applicable here: (1) complete preemption, through which a state claim arises under federal law because Congress eliminated state causes of action, replacing them with federal ones, *see Caterpillar*, 482 U.S. at 392; (2) embedded federal question jurisdiction, which exists when a well-pleaded complaint's "state-law claims . . . implicate significant federal issues," *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 308 (2005); and (3) artful pleading, which occurs when a plaintiff "couch[es] a federal claim in terms of state law," *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992).

Plaintiff's Complaint asserts solely state law claims. (*See* doc. 1-1). "Under the well-pleaded complaint doctrine it would thus appear at first blush that [the

---

[5] These doctrines are often referred to as exceptions, yet they do not contradict the well-pleaded complaint rule. Each doctrine reveals there to be a federal claim in a complaint that otherwise appeared to only contain state claims. *See Rice v. Panchal*, 65 F.3d 637, 647 n.2 (7th Cir. 1995) (citations omitted) ("[T]he complete preemption doctrine is called a 'corollary' to the well-pleaded complaint rule; to the extent that Congress has displaced a plaintiff's state law claim, that intent informs the well pleaded complaint rule, and a plaintiff's attempt to utilize the displaced state law is properly 'recharacterized' as a complaint arising under federal law.")

Court] lack[s] subject matter jurisdiction and that the [C]omplaint was not removable." *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787 (7th Cir. 2002).

However, Defendant alleges federal question jurisdiction exists because (1) the PREP Act completely preempts Plaintiff's state claims; (2) Plaintiff's state law claims necessarily depend on the resolution of a substantial question of federal law: the applicability of the PREP Act; and (3) Plaintiff artfully pleaded her Complaint to avoid stating a federal cause of action under the PREP Act. The Court will address each argument in turn.

### 1. Complete Preemption

Defendant alleges the PREP Act completely preempts Plaintiff's state claims, transforming them into federal claims. (Doc. 19 at 4). To understand Defendant's argument, some background on the PREP Act and complete preemption are needed.

### a. *PREP Act Background*

The PREP Act, enacted in 2005, immunizes certain parties from lawsuits during public health emergencies. *See* 42 U.S.C. §§ 247d-6d, 247d-6e. The Act lies dormant until the Secretary of the Department of Health and Human Services ("HHS") declares a public health emergency. *See* 42 U.S.C. § 247d-6d(b).

The Secretary issued such a declaration regarding the COVID-19 pandemic. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020) ("Declaration"). Now, with regard to the COVID-19 pandemic, "a covered person [is] immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the

10

administration to or the use by an individual of a covered countermeasure . . . ." 42

U.S.C. § 247d-6d(a)(1). This "applies to any claim for loss that has a causal

relationship with the administration to or use by an individual of a covered

countermeasure." *Id.* at § 247d-6d(a)(2)(B).

> The COVID-19 Declaration . . . defines covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." Declaration, 85 Fed. Reg. at 15,202.

> "Administration" and "use" are not defined in the PREP Act itself. But the Secretary's Declaration states that "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." *Id.*

> . . . .

> In sum, the PREP Act creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, biological products, or devices. Exceptions to immunity exist for claims of willful misconduct[,] but suit must be brought in the United States District Court for the District of Columbia [after administrative exhaustion]. All other claims for injuries "directly caused by the administration or use of a covered countermeasure" must be pursued through the Covered Countermeasure Process Fund. State laws that differ or conflict regarding the administration or use of covered countermeasures are preempted [for the purposes of ordinary preemption but not complete preemption].

*Brown v. Big Blue Healthcare*, 480 F. Supp. 3d 1196, 1202–04 (D. Kan. 2020)

(footnotes omitted).

11

The Secretary has made nine (9) amendments to the Declaration, and HHS's

Office of General Counsel ("OGC") has issued six (6) advisory opinions regarding it.

*See Public Readiness and Emergency Preparedness Act*, Public Health Emergency,

https://www.phe.gov/Preparedness/legal/prepact/Pages/default.aspx    (last    visited

Sept. 15, 2021). The Fourth Amended Declaration, 85 Fed. Reg. 79,190 (Dec. 9,

2020), and OGC's Fifth Advisory Opinion (doc. 19-1) directly apply to the issues

discussed in this Opinion:

> [T]he Secretary's Fourth Amended Declaration states that "there are
> substantial federal legal and policy issues, and substantial federal
> legal and policy interests within the meaning of *Grable & Sons Metal
> Products, Inc. v. Darue Eng'g & Mf'g*, 545 U.S. 308 (2005), in having a
> uniform    interpretation    of    the    PREP    Act." Fourth Amended
> Declaration, 85 Fed. Reg. at 79,197. Even more recently, HHS's Office
> of the General Counsel issued [its Fifth] Advisory Opinion opining that
> the PREP Act "is a 'complete preemption' statute" and that the
> Secretary's determination that the Act implicates a "substantial"
> federal question "provides the underlying basis for invoking the *Grable*
> doctrine." (*See* Advisory Opinion 21-01, Dkt. 17-1.)

*Dupervil v. All. Health Operations, LLC*, 516 F. Supp. 3d 238, 247–48 (E.D.N.Y.

2021), *appeal docketed*, No. 21-505 (2d Cir. Mar. 3, 2021).

b.    *Complete Preemption Background*

It is helpful here to distinguish between "ordinary" or "defensive" preemption

and "complete" preemption. Ordinary preemption is an affirmative defense that

exists where federal law explicitly or implicitly displaces state law within a given

scope; it can defeat liability for a state law claim, but it cannot support federal

subject matter jurisdiction over such a claim. *See Sullivan v. Am. Airlines*, 424 F.3d

267, 272–73 (2d Cir. 2005). Here the PREP Act clearly preempts incompatible state

laws. *See* 42 U.S.C. § 247d-6d(b)(8) (titled "Preemption of State Law"). However, ordinary preemption does not imply complete preemption.

" 'Complete preemption' is a misleadingly named doctrine." *Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 393 (7th Cir. 2011). "Although preemption is typically a defense to liability under state law, complete preemption serves a different function: with respect to the application of the well-pleaded complaint doctrine, it transmogrifies a claim purportedly arising under state law into a claim arising under federal law." *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 17–18 (1st Cir. 2018). It not only displaces state law but also "provides the exclusive cause of action for the claim asserted." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). When that occurs, "any complaint that comes within the scope of the federal cause of action," even if it relies exclusively on state law, "necessarily arises under federal law." *Id.* at 7 (citations and quotations omitted). Yet it is crucial to understand that "removal of state-law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of [the] federal statute[,] but rather because [the] statute . . . gives rise to original federal jurisdiction, and as a consequence allows removal under 28 U.S.C. § 1441." *Sullivan*, 424 F.3d at 276.

      c.    *The PREP Act Does Not Completely Preempt Plaintiff's Claims*

For complete preemption to apply here, not only does the PREP Act need to (1) completely preempt a class of claims, but (2) Plaintiff's claims must fall within that class of claims. *See, e.g., Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987) (citation omitted) ("[S]tate action [must] not only [be] pre-empted by ERISA, but

13

also [come] 'within the scope of § 502(a) of ERISA' . . . ."). Here, Plaintiff alleges two claims under the Illinois Nursing Home Care Act: gross negligence (Count I) and willful misconduct (Count II). (Doc. 1-1 ¶¶ 147, 161, at 33, 48).

       i.   <u>The PREP Act Does Not Completely Preempt Negligence Claims</u>

Defendant argues Count I is completely preempted by the PREP Act because Plaintiff's "allegations directly speak to the manner in which Defendant used and administered 'covered countermeasures.' " (Doc. 19 at 9–11).

Complete preemption is so extraordinary and rare that "the Supreme Court has recognized it under only three statutes: § 301 of the Labor Management Relations Act [(LMRA)], . . . the Employee Retirement Income Security Act of 1974 [(ERISA)], . . . and § 30 of the National Bank Act[.]" *Roddy v. Grand Trunk W. R.R.*, 395 F.3d 318, 323 (6th Cir. 2005) (citing *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 6–7 (2003)). In each case, "the federal statutes at issue provided [(1)] the exclusive cause of action for the claim asserted and also [(2)] set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank*, 539 U.S. at 8.

The PREP Act does not provide any cause of action (let alone an exclusive, federal one) for any claim other than willful misconduct, such as negligence. *See* 42 U.S.C. § 247d–6d, 247d–6e. Naturally, the Act also does not set forth procedures and remedies for a nonexistent cause of action. With regard to such claims, the PREP act is merely "an immunity statute; it does not create rights, duties, or obligations." *See Dupervil v. All. Health Operations, LLC*, 516 F. Supp. 3d 238, 251 (E.D.N.Y. 2021), *appeal docketed*, No. 21-505 (2d Cir. Mar. 3, 2021). Thus, the PREP

Act is clearly not a completely preempting statute for any claim other than willful

misconduct—ending the inquiry for Count I.[6]

        ii.  <u>The PREP Act Does Not Apply to Plaintiff's Willful Misconduct<br>Claim</u>

The Seventh Circuit has not yet decided whether the PREP Act completely

preempts willful misconduct claims within its scope.[7] Assuming *arguendo* that it

---

[6] *Contra Garcia v. Welltower OpCo Grp. LLC*, SACV 20-02250, 2021 U.S. Dist. LEXIS 25738, 2021 WL 492581, at *7 (C.D. Cal. Feb. 10, 2021), *appeal docketed*, No. 21-55224 (9th Cir. Mar. 10, 2021); *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, 2021 U.S. Dist. LEXIS 105847, at *12–13 (W.D. La. Apr. 30, 2021). *Garcia* and *Rachal* followed OGC's Fifth Advisory Opinion, (doc. 19-1), finding it persuasive and deferring to it according to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). However, every other court to address the issue has disagreed: "Other than two outlier cases, [*Garcia* and *Rachal*,] courts have consistently held that [OGC's Fifth Advisory Opinion] does not show that the PREP Act completely preempts state claims . . . ." *Lollie v. Colonnades Health Care Ctr. Ltd.*, No. H-21-1812, 2021 U.S. Dist. LEXIS 172981, at *7 n.1, *13 (S.D. Tex. Sep. 13, 2021) (collecting 46 such cases).

[7] Because Plaintiff's claims fall outside the PREP Act's scope, as discussed *infra*, the issue is not necessary to the instant holding, and the Court need not decide it. However, the Court includes the following discussion regarding whether the PREP Act completely preempts willful misconduct claims.

For willful misconduct claims within its scope, the PREP Act provides a federal forum *after administrative exhaustion*. There is a circuit split over whether complete preemption requires a federal court hear the claim in the first instance or whether a federal forum provided after administrative exhaustion suffices. The Second and Ninth Circuits hold the former position, while the Seventh Circuit holds the latter. *Compare Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 276, 278 (2d Cir. 2005) (Disputes that "cannot be filed in the first instance in federal court [because they must be filed first with an administrative agency] are therefore not removable to federal court. . . . Because such disputes cannot be brought in federal court in the first instance, federal courts may not take jurisdiction over them simply to dismiss them on the basis that they are defensively preempted and belong before arbitral panels."), *and Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1245 (9th Cir. 2009) (citation omitted) ("[T]he RLA does *not* provide an exclusive federal cause of action. Rather than allowing disputes . . . to be filed initially in federal court, the RLA instead requires submission of such disputes to internal dispute-resolution processes and then to a division of the National Adjustment Board or an arbitration board selected by the parties."), *with Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 395 (7th Cir. 2011) ("[F]ederal courts do not entertain suits about unfair labor

does, the PREP Act can only completely preempt the class of "willful misconduct" claims "for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d–6d(a)(1), (d)(1).

Yet Plaintiff does not allege her mother's "injuries arose from, *e.g.*, Defendant['s] administration to [her] of vaccines or medicines (or for that matter protective gear) . . . ." *Estate of Maglioli v. Andover Subacute Rehabilitation Ctr.*, 478 F. Supp. 3d 518, 532 (2020) (emphasis in original). Rather, Plaintiff argues that use of countermeasures *could* have prevented her mother's injuries. (*See* doc. 1-1 at 3–4, 14, 15–16, 18, 20–21, 25, 27, 29–31, 34–35, 39–41, 43–46).

In response, Defendant argues Count II falls within the class of claims preempted by the PREP act because it believes the Act applies to the *nonuse* of covered countermeasures. (Doc. 19 at 3, 9–14).

The Court rejects Defendant's argument for the same reasons the District of Kansas remanded an identical case (in which the plaintiff sued a nursing home for alleged failure to take adequate COVID-19 precautions, resulting in her mother's death):

> Defendants generally argue that Plaintiff's allegations fall within the scope of the PREP Act. But in doing so, they generally just re-write Plaintiff's allegations using the language of the PREP Act—language never actually used in Plaintiff's complaint. They also argue that

---

practices; only the National Labor Relations Board can adjudicate disputes under sections 7 or 8 of the NLRA. A suit alleging an unfair labor practice filed in state court, and removed to federal court, will be dismissed rather than resolved on the merits. This establishes that complete preemption does not depend on the ability of the federal courts to supply a remedy.").

allegations that the facility failed to provide adequate protections invokes all devices and other interventions that the facility did use. But . . . there are no allegations that the administration or use of any of those things caused the death of the decedent. Again, the allegations are the opposite—that Defendants' failure to act caused the decedent's death. To the extent Defendants want to argue that the PREP Act applies, they must do so based on the complaint as it is—not as Defendants would prefer it to be. *Caterpillar*, 482 U.S. at 396-97 (noting that a defendant cannot ignore the allegations in the complaint and argue "that there are different facts [Plaintiff] might have alleged that would have constituted a federal claim" so that it can "justify removal on the basis of facts not alleged in the complaint").

. . . .

Suffice it to say that the Court is not convinced that a facility using covered countermeasures somewhere in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility. The PREP Act still requires a causal connection between the injury and the use or administration of covered countermeasures, and that link is not present under Defendants' interpretation.

. . . .

Indeed, if Congress intended the PREP Act to apply as broadly as Defendants advocate, it certainly could have written it to clearly apply to inaction as much as action. Instead, the PREP Act addresses the administration or use of covered countermeasures. There is simply no room to read it as equally applicable to the non-administration or non-use of covered countermeasures. *See Estate of Maglioli*, 2020 U.S. Dist. LEXIS 145055, 2020 WL 4671091, at *9 (finding that "the PREP Act . . . is designed to protect those who employ countermeasures, not those who decline to employ them").

*Brown v. Big Blue Healthcare*, 480 F. Supp. 3d 1196, 1205–07 (D. Kan. 2020).

In making this determination, the Court acknowledges the Secretary's Fourth Amended Declaration included a small subset of nonuse claims:

It's true that the Secretary has indicated "that an 'inaction claim' is not necessarily beyond the scope of the PREP Act." *Reed, et al. v. Sunbridge Hallmark Health Servs., LLC*, No. CV 21-3702, 2021 U.S. Dist. LEXIS 119092, 2021 WL 2633156, at *4 (C.D. Cal. June 25, 2021). However, immunity for such claims is the exception, not the

rule. The Secretary's December 3, 2020 Amendment makes clear that inaction claims fall within the scope of the PREP Act only where: "(1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual." *Id.* (citing Fourth Amendment, 85 Fed. Reg. at 79,197). In other words, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public authority's directive, can fall within the PREP Act and th[e] Declaration's liability protections." *Reed*, 2021 U.S. Dist. LEXIS 119092, 2021 WL 2633156, at *4 (quoting Fourth Amendment, 85 Fed. Reg. at 79,197). For example, the Act could immunize a pharmacy that chooses to administer vaccines to people in Group 1 from a lawsuit brought by someone in Group 2 alleging that the pharmacy wrongfully denied him a vaccine shot. "This specific example makes clear that the non-administration of a vaccine in limited supply necessarily arises from the decision to administer the vaccine to others first." *Lopez v. Life Care Ctrs. of Am., Inc.*, No. CV 20-0958, 2021 U.S. Dist. LEXIS 56102, 2021 WL 1121034, at *11 (D.N.M. Mar. 24, 2021).

*Ruiz v. ConAgra Foods Packaged Foods, LLC*, No. 21-CV-387, 2021 WL 3056275, 2021 U.S. Dist. LEXIS 134677, at *10–11 (E.D. Wis. July 20, 2021) (alterations in original). However, that subset of nonuse clearly does not apply here. The Complaint nowhere alleges Plaintiff's mother contracted COVID-19 as a result of Defendant's purposeful allocation of countermeasures to other individuals. (Doc. 1-1).

Undeterred, Defendant relies on OGC's Fifth Advisory Opinion, which argues the PREP Act covers *all nonuse* except for the "failure to make any decisions whatsoever, thereby abandoning [the] duty to act as a program planner or other covered person." (Doc. 19-1 at 4).

However, that Advisory Opinion lacks binding legal authority.[8] It disclaims as much, stating, "This Advisory Opinion sets forth the current views of the Office of the General Counsel. It is not a final agency action or a final order. It does not have the force or effect of law." *Id.* at 5 (footnote omitted). Moreover, "informal agency interpretations such as those contained in 'opinion letters . . . policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference.' " *AFGE, Local 2119 v. Rumsfeld*, 262 F.3d 649, 656 (7th Cir. 2001) (cleaned up).

"Nevertheless, given the specialized experience and broader information available to such an agency, these informal interpretations are 'entitled to respect' to the extent that they have the 'power to persuade.' " *Id.*; *see Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). OGC's Fifth Advisory Opinion has failed to persuade this Court or any other—save two:

> [N]early every district court to consider whether the PREP Act completely preempts similar state-law claims against nursing homes "has concluded the PREP Act is not a complete preemption statute, or at least does not have such an effect on claims like those presented here." *See, e.g.*, *Winfred Cowan*, 2021 U.S. Dist. LEXIS 61708, 2021 WL 1225965, at *4 (collecting cases); *see also* (Doc. No. 46 at 1). Indeed,

---

[8] Under *Chevron, Inc. v. NDRC, Inc.*, 467 U.S. 837, 843 (1984), federal courts must defer to an agency's reasonable interpretation of an ambiguous statute "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001). "Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent." *Id.* at 227. When *Chevron* deference is inapplicable, *Skidmore* permits federal courts to defer to an agency's statutory interpretation to the extent they find the agency's rationale persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

the *only* case[s] to conclude otherwise [are *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, 2021 U.S. Dist. LEXIS 105847 (W.D. La. Apr. 30, 2021) and] *Garcia v. Welltower OPCo Grp. LLC*, No. SACV 20-02250, 2021 U.S. Dist. LEXIS 25738, 2021 WL 492581, at *7 (C.D. Cal. Feb. 10, 2021), *appeal docketed*, No. 21-55224 (9th Cir. Mar. 10, 2021). Critical to [*Rachal*'s and] *Garcia*'s holding, however, was the court's deference to the HHS's January 8, 2021 [Fifth] Advisory Opinion (Doc. No. 32 at 3–7), which opined that the PREP Act is a complete preemption statute because it establishes both "a federal cause of action, administrative or judicial, as the only viable claim [and] vests exclusive jurisdiction in a federal court." (See Doc. No. 32 at 3–7); *see also Garcia*, 2021 U.S. Dist. LEXIS 25738, 2021 WL 492581, at *7 ("Given this recent guidance, the Court finds that the PREP Act provides for complete preemption.").

But *Garcia* is nonbinding, and this Court joins the other district courts that have unanimously concluded that the HHS's Advisory Opinion should not receive unfettered deference. First, to the extent *Garcia* gave *Chevron* deference to the Advisory Opinion, that would have been clear error because the Advisory Opinion itself expressly states that "[i]t is not a final agency action or a final order" and "does not have the force or effect of law." (Doc. No. 32 at 7); *see Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 642 (6th Cir. 2004) ("only those administrative interpretations that Congress and the agency intend to have the 'force of law,' as opposed to those merely characterized as 'authoritative,' qualify for *Chevron* deference") (citations omitted). Second, "[e]ven if the [Advisory Opinion] did not include the clear disclaimer language, the authority Congress delegated to HHS to make rules carrying the force of law did not include authority to interpret the jurisdiction of the federal courts." *Estate of Jones v. St. Jude Operating Co., LLC*, No. 3:20-cv-01088, 2021 U.S. Dist. LEXIS 43876, 2021 WL 900672, *6 (D. Or. Feb. 16, 2021) (citations omitted).

*Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, No. 3:20-cv-00683, 2021 WL 1561306, 2021 U.S. Dist. LEXIS 76193, at *19–21 (M.D. Tenn. Apr. 21, 2021) (cleaned up).

The Court agrees with and adopts the reasoning in *Bolton*. The OGC's Fifth Advisory Opinion (doc. 19-1) is unpersuasive and merits no deference under *Chevron* or *Skidmore*, as it has neither a legal nor logical basis for reading

wholesale nonuse into the statute. If Congress intended the PREP Act to apply to nonuse generally, it would have simply added one word to the detailed statute: "nonuse." However, doing so would defeat the basic purpose of the statute. It is obvious "the PREP Act . . . is designed to protect those who employ countermeasures, not those who decline to employ them." *Estate of Maglioli*, 478 F. Supp. 3d. at 531.

Thus, Plaintiff's willful misconduct claim falls outside the PREP Act's scope because Plaintiff does not allege loss from the administration or use of a covered countermeasure—but rather from the general *nonuse* of countermeasures. Regardless of whether the PREP Act completely preempts willful misconduct claims within its scope, Count II is not within the scope of preempted claims.

Given that the PREP Act does not completely preempt either of Plaintiff's claims, Defendant cannot establish federal question jurisdiction on that basis.

## 2. State Claims with Embedded Federal Questions

Defendant next argues Plaintiff's state law claims are subject to federal question jurisdiction because a necessary element of each claim is an embedded federal question. (*See* Doc. 19 at 4, 7).

Federal-question jurisdiction can apply to state-law claims in "a special and small category of cases." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (citations omitted). A well-pleaded complaint can present a federal question if "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983). "A plaintiff's complaint is said to present an

'embedded' federal issue supporting federal-question jurisdiction if it raises a federal issue that is '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.' " *Sarauer v. Int'l Ass'n & Aero. Workers, Dist. No. 10*, 966 F.3d 661, 673 (7th Cir. 2020) (quoting *Gunn v. Minto*n, 568 U.S. 251, 258 (2013)). "If any of the four requirements is not satisfied, the exception does not apply." *Dupervil v. All. Health Operations, LLC*, 516 F. Supp. 3d 238, 257 (E.D.N.Y. 2021) (citations omitted), *appeal docketed*, No. 21-505 (2d Cir. Mar. 3, 2021).

Here, the analysis starts and ends with *Grable* element one.[9] "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (6th Cir. 2016) (citing *Grable*, 545 U.S. at 314). The "substantial, disputed question of federal law [must be] a *necessary element*" of Plaintiff's well-pleaded state-law claim. *Franchise Tax Bd.*, 463 U.S. at 13 (emphasis added).

As the Seventh Circuit held in *Chi. Tribune Co. v. Bd. of Trs. of the Univ. of Ill.*, "*Grable* does not alter the rule that a potential federal defense is insufficient to create federal jurisdiction under § 1331." 680 F.3d 1001, 1003 (7th Cir. 2012) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006)). "*Grable* has nothing to do with using federal defenses to move litigation to federal court. In . . . *Grable*, the federal issue was part of the plaintiff's own claim." *Id.*

---

[9] Defendant cannot satisfy the first element of the *Grable* test. Consequently, the Court need not analyze whether the latter elements are met.

The following examples make clear the difference between a federal question embedded in (i.e., necessarily raised by) a well-pleaded state complaint and a federal question raised by an affirmative defense. In *Grable*, the plaintiff had to prove inadequate notice under federal law as an *element* of his state quiet title claim against the IRS, who had seized his real property. 545 U.S. at 314. Similarly, in *Gunn v. Minton*, as an *element* of his state malpractice claim, the plaintiff had to demonstrate he would have prevailed on his federal patent claim but for the defendant's malpractice. 568 U.S. 251, 259 (2013). Finally, in *Dillon v. Medtronic, Inc.*, the plaintiff had to prove a violation of a federal duty to establish negligence per se. 992 F. Supp. 2d 751, 756 (E.D. Ky. 2014)). In each case, the "claims [were] affirmatively premised on, or on their face necessarily require[d] resolution of," federal law. *Dupervil*, 516 F. Supp. at 257.

In contrast, the federal issue here is not a necessary element of Plaintiff's claims. Plaintiff's two claims for gross negligence and willful misconduct require her to establish elements like duty, breach, cause, and harm under state statutory and common law. (*See* Doc. 1-1 at 19–32, 35–48); 210 ILCS 45/1-128.5 ("A 'Type "AA" violation' means . . . a facility that *proximately caused* a resident's *death*.") (emphasis added). Plaintiff need not and did not rely on federal law to establish any element of her claims (such as a violation of federal law to establish negligence per se). Defendant's allegation that the PREP Act gives it immunity is merely an affirmative defense; there is no part of Plaintiff's claims that requires her to rely on the PREP Act.

So, while Defendant "may have a federal defense to the [Plaintiff's] claim, it is blackletter law that a federal defense differs from a claim arising under federal law." *Chi. Tribune Co.*, 680 F.3d at 1003. If defendants could use removal jurisdiction by merely pleading federal defenses, as Defendant proposes, *Mottley*'s well-pleaded complaint rule would be stripped of all meaning, and "the plaintiff would be master of nothing." *Caterpillar*, 482 U.S. at 399.

It is worth noting Defendant's invocation of the Secretary's Fourth Amended Declaration, 85 Fed. Reg. 79,190 (Dec. 9, 2020), and OGC's Fifth Advisory Opinion (doc. 19-1) do not change this analysis. "Although the Secretary's view on the federal interests underlying the PREP Act [is] compelling, neither the Fourth Amended Declaration nor the Advisory Opinion address [*Grable* element one,] whether . . . a 'disputed question of federal law is a *necessary element of one of the well-pleaded state claims* . . . .' " *Estate of Winfred Cowan v. Lp Columbia Ky*, No. 1:20-CV-00118, 2021 WL 1225965, 2021 U.S. Dist. LEXIS 61708, at *19–20 (W.D. Ky. Mar. 30, 2021) (quoting *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007)) (emphasis in original).

Furthermore, as analyzed in *Dupervil*, the Advisory Opinion misinterprets *Grable* and proposes a radical use of diversity jurisdiction in cases lacking diversity:

> The recent Advisory Opinion, previously discussed, opining that the Secretary's Fourth Amended Declaration supports the *Grable* doctrine is unpersuasive. (*See* Advisory Opinion 21-01, Dkt. 17-1, at 4-5 (opining, inter alia, that the Secretary's determination that the Act implicates a "substantial" federal question "provides the underlying basis for invoking the *Grable* doctrine").) The Advisory Opinion's only guidance on the "necessarily raised" factor is a selective (mis)quotation from *Grable*: "Thus, a substantial federal question is implicated, for

24

example, where 'the interpretation of a federal statute [ ] actually is in dispute in the litigation and is so important that it sensibly belongs in federal court.' " (*Id.* at 4-5 (alteration in original) (quoting *Grable*, 545 U.S. at 315).) The plaintiff in *Grable*, however, "premised its superior title claim [*i.e.*, its well-pleaded state-law claim] on a failure by the IRS to give it adequate notice, as defined by federal law." *Grable*, 545 U.S. at 314-15 (emphasis added). The *Grable* Court therefore concluded: "Whether *Grable* was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim[.]" *Id.* at 315. By contrast, here, the PREP Act, a statute affording immunity, is not an essential element of any of Plaintiff's claims. The Advisory Opinion is thus unhelpful. It, moreover, takes the incredible position that once *Grable* is invoked, "the court retains the case to decide whether the immunity and preemption provisions apply; if they do not apply, then the court would try the case as it would a diversity case" (Dkt. 17-1, at 5), presumably even if the parties, as here, are not diverse. The Court declines to accept this effective rewriting of diversity jurisdiction under 28 U.S.C. § 1332, and principles of subject-matter jurisdiction more generally. *Cf. Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) ("Since its enactment, we have interpreted the diversity statute [28 U.S.C. § 1332] to require 'complete diversity' of citizenship." (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806))); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 76-77 (1996) ("[I]f, at the end of the day and case, a jurisdictional defect remains uncured, the judgment must be vacated." (citing Fed. R. Civ. P. 12(h)(3))). Rather, the Court follows every district court to have considered the *Grable* exception in this context, and concludes that federal-question jurisdiction does not "lie over" Plaintiff's state-law claims. See *Anson*, 2021 U.S. Dist. LEXIS 17056, 2021 WL 308156, at *11 n.7; *Smith*, 2021 U.S. Dist. LEXIS 5210, 2021 WL 100376, at *2; *Saldana*, 2020 U.S. Dist. LEXIS 216490, 2020 WL 6713995, at *2 n.3; *Martin*, 2020 U.S. Dist. LEXIS 165874, 2020 WL 5422949, at *2-3.

*Dupervil*, 516 F. Supp. at 258–59.

As it is not entitled to *Chevron* deference and is entirely unpersuasive—thus not meriting *Skidmore* deference—the Court declines to defer to OGC's Fifth Advisory Opinion (doc. 19-1). Because Plaintiff's claims do not necessarily raise a federal issue, this case falls outside "the 'special and small category of cases' where the embedded-federal-question doctrine applies, and it would therefore be improper

to remove [the] case on that basis." *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, No. 3:20-cv-00683, 2021 WL 1561306, 2021 U.S. Dist. LEXIS 76193, at *13–14 (M.D. Tenn. Apr. 21, 2021).

### 3.  Artful Pleading

Finally, Defendant argues Plaintiff artfully pleaded her Complaint to avoid stating a federal claim. (Doc. 19 at 14–15).[10]

> Plaintiffs . . . may not avoid removal to federal court by omitting necessary federal questions from their complaints through artful pleading. While plaintiffs are entitled to omit federal claims from their complaints so as to avoid federal jurisdiction, they may not omit necessary federal elements of an included claim. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 22 (1983). Put another way, a "plaintiff cannot frustrate a defendant's right to remove by pleading a case without reference to any federal law when the plaintiff's claim is necessarily federal." 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3722 (4th ed.). When a plaintiff omits from its pleadings federal questions that are necessary elements of a claim, courts will read the necessary federal elements into the complaint. *See Hays v. Cave*, 446 F.3d 712, 713 (7th Cir. 2006) ("What is true is that if federal law creates the claim on which the plaintiff is suing, the fact that he has omitted from his complaint any reference to federal law will not defeat removal.")

*Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 890–91 (7th Cir. 2013), *as amended* (Apr. 29, 2013).

Nothing indicates that Plaintiff avoided pleading a necessary federal element of her claims. Her two claims arise solely under state statute. *See* Nursing Home

---

[10] The Court notes Defendant did not raise this argument in its Notice of Removal (doc. 1)—only in its Response to Plaintiff's Motion to Remand (doc. 19). This technically runs afoul of 28 U.S.C. § 1446(a), which requires "a notice of removal [contain] a short and plain statement of the *grounds* for removal." (emphasis added). However, as Defendant's argument is toothless, and as Plaintiff was able to reply to the argument (doc. 25), it matters little.

Care Act, 210 ILCS 45/1-101 *et seq*. They are tort claims with elements such as duty, breach, cause, and harm, which are elucidated by state law; they have no necessary federal element. *See id.*; Section II(A)(2) *supra*. Thus, Defendant's argument that its PREP Act affirmative defense somehow requires Plaintiff to plead a federal element is entirely unpersuasive. There was no artful pleading to Plaintiff's Complaint; her claims simply did not contain any necessary federal element.

Furthermore, the artful pleading corollary appears to only apply when complete preemption or an embedded federal question are also present, making it unclear what work the doctrine does, if any.[11] As the Court found that neither complete preemption nor embedded federal question jurisdiction apply here, it should come as no surprise that artful pleading also does not apply.

---

[11] The Eastern District of Kentucky articulated the conundrum:

> **Artful Pleading:** . . . What, if any, independent work this doctrine does, however, remains a mystery. The Supreme Court in *Rivet* explained that complete preemption is an application of artful pleading doctrine. 522 U.S. at 475. The doctrine might also encompass "situations in which federal issues are embedded within state law causes of action," but even if that is correct, *Grable*'s four-part test still limits which of these situations confer jurisdiction. Wright & Miller § 3722.1. Moreover, like complete preemption, jurisdiction based on a strategically pled complaint is only possible when the plaintiff's claims "actually implicate a federal cause of action" that might have been invoked absent artful pleading. *Mikulski*, 501 F.3d at 561-63. Otherwise, without an alternative federal cause of action there would be nothing to plead around. There is no artifice in failing to plead a claim that does not even exist. Artful pleading doctrine thus appears to have nothing to add beyond serving as an umbrella term or underlying theory for other rules.")

*Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 758 (E.D. Ky. 2014) (emphasis in original).

For the reasons discussed above, especially given that any doubt about federal court jurisdiction under 28 U.S.C. § 1441 should be resolved in favor of remand, *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009), the Court finds Defendant has failed to demonstrate this action was properly removed. The Motion to Remand must therefore be granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (docs. 16, 21) is GRANTED, and this case is REMANDED to the Circuit Court of the Eleventh Judicial Circuit of Illinois in McLean County.

SO ORDERED.

Entered this 22nd day of September 2021.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
